IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE C. SHARP, MD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | _____ |
| UNUM GROUP, | § | |
| | § | JURY DEMANDED |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff ELAINE C. SHARP and files this her Original Complaint complaining of Defendant UNUM GROUP, and for causes of action would respectfully show the Court as follows:

**I.   PARTIES**

1. Plaintiff ELAINE C. SHARP, MD ("Dr. Sharp") is an individual residing at 157 Le Port Drive, Pensacola Beach, Florida 32561.

2. Defendant UNUM GROUP ("UNUM"), does business in Texas under the name of UNUM Group Corporation. UNUM is a Delaware Corporation, registered to do business in Texas. UNUM can be served by serving its Registered Agent Corporation Services Company d/b/a CSD-Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, Texas 78701. UNUM has its principal place of business in Chattanooga, Tennessee.

**II.   JURISDICTION**

3. This action is an action between Dr. Sharp, a citizen of the State of Florida, and UNUM, a citizen of the State of Delaware and Tennessee pursuant to 28 U.S.C. §1332(c)(1). The matter in controversy exceeds the sum of Seventy Five Thousand Dollars and no/100 ($75,000.00) exclusive of interest and costs. Jurisdiction is specifically conferred on the Court by 28 U.S.C.A. §1332(a)(1).

1

### III. VENUE

4. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Houston, Harris County, Texas. Venue is also proper in Texas because the disability insurance policy that is the subject of this Complaint was issued to a group, association or trust located in Texas. When a group insurance contract is sold, it is approved and issued based upon the insurance laws of the state where the group, association or trust is located. This Complaint concerns an insurance contract subject to the insurance laws of the State of Texas and the jurisdiction of the Texas Department of Insurance.

### IV. FACTUAL BACKGROUND

5. In August 1989, Dr. Sharp purchased a Disability Income Protection Coverage Policy, Policy Series 337, Policy Number 06-337-7017573 (the "Policy") from Provident Life And Accident Insurance Company ("Provident"). Dr. Sharp was living in the Houston area when she applied for, and purchased, the Policy through Provident's agents in Houston. On or about October 23, 1991, Dr. Sharp applied to Provident for additional coverage under her Policy. Provident increased the total monthly benefit for total disability to Seven Thousand Four Hundred Twenty Dollars and no/100 ($7,420.00), with automatic annual increases as set forth in the Policy Update Rider.

6. Provident had its corporate offices in Chattanooga, Tennessee. In 1999, Provident and UNUM merged to form UNUMProvident Corporation. In 2007, UNUMProvident Corporation changed its name to UNUM Group, with three primary divisions: UNUM US, UNUM UK and Colonial Life.

7. UNUM touts the company as a leader in financial protection benefits. According to UNUM, it has been the leading provider of group disability benefits in the United States providing crucial income when people can't work because of injury or illness.

8. In 2007, Dr. Sharp was employed by Jersey Community Hospital. Her employer required Dr. Sharp attend an Allergan sponsored Physician "Botox Seminar/Workshop." Her attendance was mandatory and not in any way related to her desire to improve her appearance. The Botox Workshop

curriculum included practice exercises where attendees would practice administering Botox injections on each other. The Botox injection caused Central Retinal Vein Obstruction ("CRVO"). Dr. Sharp was fifty five (55) years of age at the time. Dr. Sharp continued to work until March 2014. Dr. Sharp is unable to do surgeries without the assistance of another physician.

9. Dr. Sharp made a claim for disability benefits under the Policy on or about March 15, 2014 due to the CRVO. Initially, UNUM determined that Dr. Sharp was totally disabled and paid benefits accordingly. UNUM later reasoned that Dr. Sharp's CRVO was indicative of "sickness," and not a result of accident. UNUM took the position that the CRVO was not secondary to the Botox injection.

10. On or about September 25, 2014, UNUM informed Dr. Sharp that it was denying Dr. Sharp's disability claim because UNUM determined that Dr. Sharp's "disability is due to a sickness." UNUM stated:

> "We have determined that your Total Disability that started after your 62nd birthday and before your 63rd birthday is due to a sickness. Based on this information your maximum benefit period is 42 months. We previously communicated that the maximum benefit period was 48 months. This was an error."

11. Dr. Sharp provided UNUM the facts and response to UNUM's September 25, 2014 determination asking UNUM for a reevaluation of UNUM's decision. On December 3, 2014, UNUM informed Dr. Sharp that the reevaluation determined that her disability is due to a sickness.

12. UNUM further stated that based on its review "benefits are not payable under the accident provision and are payable under the sickness provision because we have determined that the injection is not the cause of the disability condition. Even if the disability condition was due to the Botox injection, the claim would be payable under the Sickness provision due to the Cosmetic Surgery provision which states "You might be disabled from surgery to improve your appearance or correct disfigurement. If so, we will consider it to be the result of sickness."

13. The Policy provides as follows:

"Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

3

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you."

"Injuries means and accidental bodily injuries occurring while your policy is in force."

"Sickness means sickness or disease which is first manifested while your policy is in force."

14. Dr. Sharp's disability was the result of the injury caused by the Botox injection in 2007. The Policy provides the following Maximum Benefit Periods:

Injuries:

Total Disability starting before your 65th birthday … for life.

Sickness:

Total Disability starting before your 60th birthday … for life.

15. Dr. Sharp is entitled to total disability because of her injury before her 65th birthday for life. UNUM has denied her claim for such payments.

### V.   CAUSES OF ACTION

#### COUNT ONE:   Breach of Contract

16. Paragraphs 1 through 15 of Plaintiff's Original Complaint are incorporated herein.

17. In accordance with the previous allegations, Defendant breached the contractual obligations to Plaintiff contained in the Policy through, among other things, breaching the terms of the Policy and denying her claim for disability benefits. This breach of contract is the proximate cause of damages both direct and consequential to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court.

18. Pursuant to and in compliance with the Tex.Civ.Prac. & Rem. Code §38.002, Plaintiff made demand upon Defendant for payment of the amounts due under the Policy. Despite this demand by Plaintiff, Defendant has refused and continues to refuse to pay the amounts owed. Because of Defendant's breach of its obligations, Plaintiff was required to retain attorneys who she has promised to pay a reasonable attorney's fee for their services.

**COUNT TWO:   <u>Violation of Texas Insurance Code. Chapter 541, Unfair Settlement Practice</u>**

19. Paragraphs 1 through 18 of Plaintiff's Original Complaint are incorporated herein.

20. As alleged above, Defendant used or employed an act or practice in violation of the Texas Insurance Code.  Defendant's denial of Plaintiff's disability claim constitutes a violation of the Texas Insurance Code §541.060.  Defendant failed to attempt a prompt, fair, and equitable settlement of the claim where the insurer's liability has become reasonably clear in violation of §541.060(a)(2).

21. Defendant's denial of Plaintiff's claim constitutes an unfair settlement practice, because Defendant:

   (1) Misrepresented to Plaintiff a material fact or Policy provision concerning the disability coverage;

   (2) Failing to properly provide Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts and applicable law, for Defendant's denial of her claim.

22. Plaintiff asserts her claims for violations of the Texas Insurance Code §541.151.  Plaintiff will show that the violations and omissions were done knowingly with an actual awareness of the falsity, unfairness, or deception.  Consequently, Plaintiff requests that the trier of fact award Plaintiff actual and additional damages as provided by the Texas Insurance Code.

**COUNT THREE:   <u>Violations of the Texas Deceptive Trade Practice-Consumer Protection Act ("DTPA")</u>**

23. Paragraphs 1 through 22 of Plaintiff's Original Complaint are incorporated herein.

24. Plaintiff is a consumer under the DTPA (Texas Business & Commerce Code, Chapter 17.46) because she purchased services from Defendant.

25. The acts and practices that form the basis for Plaintiff's claims under the DTPA were done by Defendant with actual awareness of the falsity, deception, or unfairness of the act or practice or with actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty and with the specific intent that the Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

26. Defendant engaged in false, misleading, or deceptive practices as set forth herein that violate the DTPA, Tex. Bus. & Com. Code Ann. §17.46(b) in at least the following ways:

   a. Defendant caused confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services, Section 17.46(b)(2);

   b. Defendant represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities they did not have, Section 17.46(b)(5);

   c. Defendant represented that an agreement conferred or involved rights, remedies, or obligations that it did not, or that were prohibited by law, Section 17.46(b)(12); and

   d. Defendant failed to disclose information about goods or services that was known at the time of the transaction, intending to induce Plaintiff to enter into a transaction that the consumer would not have entered into if the information had been disclosed, Section 17.46(b)(24).

27. The acts, practices, and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiff to Plaintiff's detriment.

28. As alleged above and incorporated herein, Defendant engaged in an "unconscionable action or course of action" to the detriment of Plaintiff, as that term is defined by Section 17.50(a)(3) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree. The resulting unfairness is glaringly noticeable, flagrant, complete and unmitigated.

## COUNT FOUR: Violation of Texas Insurance Code chapter 541

29. Paragraphs 1 through 28 of Plaintiff's Original Complaint are incorporated herein.

30. As alleged above and incorporated herein, Defendant used or employed an act or practice in violation of Texas Insurance Code chapter 541.

31. After having received notice of Plaintiff's losses clearly covered by the contract of insurance, all as set out in the preceding paragraphs of this petition, Defendant engaged in several unfair settlement practices, as enumerated and defined as unfair or deceptive in Section 541.060(a) of the Texas

Insurance Code and Section 17.46 (b) of the Texas Business and Commerce Code, including but not limited to the following:

    a.    Misrepresenting material facts relating to the coverage of the insurance contract made the basis of this suit.

    b.    Failing to affirm or deny coverage within a reasonable time.

32. Plaintiff will show that these acts and omissions of Defendant's part were done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, Plaintiff requests that the trier of fact award Plaintiff additional damages of up to three times the sum of actual damages suffered.

### COUNT FIVE:  Breach of Duty of Good Faith and Fair Dealing

33. Paragraphs 1 through 32 of Plaintiff's Original Complaint are incorporated herein.

34. From the time Plaintiff's claim was presented to Defendant, Defendant's liability to pay the claim in accordance with the terms of the insurance policy was reasonably clear. Despite there being no basis on which a reasonable insurer would have relied to deny payment of Plaintiff's claim, Defendant refused to accept the claim and pay Plaintiff as the Policy required.

35. At that time, Defendant knew or should have reasonably known by the exercise of reasonable diligence that its liability was reasonably clear. In this regard, Plaintiff will show the Defendant failed to conduct a reasonable, proper investigation o the claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying a valid claim.

36. Consequently, Defendant breached its duty to deal fairly and in good faith with Plaintiff. Defendant's breach was a proximate cause of the losses, expenses, and damages suffered by Plaintiff as more specifically described below.

37. The breach of duty by Defendant was aggravated by the kind of gross negligence for which the law allows the imposition of exemplary damages. Defendant's conduct involved an extreme degree of risk potential harm to Plaintiff or others and, despite Defendant being actually and subjectively

aware of the risk involved, Defendant proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff and others. Defendant's conduct included the making of a material false representation that was false and either known by Defendant to be false or made as a positive assertion with reckless disregard for the truth. Defendant intended that the representation would be relied upon by Plaintiff and, in fact, Plaintiff did rely on the representation and suffered harm as a result. Plaintiff, therefore, seeks exemplary damages in an amount to be assessed by the trier of fact.

## VI.    ATTORNEY'S FEES

38.     It has been necessary for Plaintiff to retain the law firm of Castillo Snyder, PC, Bank Of America Plaza, Suite 1020, 300 Convent Street, San Antonio, Texas 78205 to prosecute this suit pursuant to Chapter 38 of the Tex. Civ. Prac. & Rem. Code and the DTPA. Plaintiff has promised to pay Castillo Snyder, PC a reasonable attorney's fees for their services. Pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code and the DTPA, Plaintiff should be awarded her reasonable attorney's fees and costs through the trial of this case and through any appeal thereof.

## VII.    ACTUAL DAMAGES

39.     Plaintiff sustained actual economic damages as a result of the actions and/or omissions of the Defendant.

40.     Plaintiff sustained actual mental anguish damages as a result of the actions and/or omissions of the Defendant.

41.     Plaintiff sustained actual emotional distress damages as a result of the actions and/or omissions of the Defendant.

## VIII.    ADDITIONAL AND EXEMPLARY DAMAGES

42.     As asserted in paragraph 13-19 above, Defendant's false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "intentionally."

43.     Therefore, Plaintiff requests, and is entitled to recover, in addition to full compensation for actual economic and mental anguish damages, "additional damages" of three times the total economic and mental anguish damages as found by the trier of fact, Tex. Bus. & Comm. Code §17.50(b)(1).

## IX. JURY DEMAND

44. Plaintiff requests that this case be decided by a jury as allowed by Rule 81 of the Federal Rules of Civil Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Elaine C. Sharp, MD respectfully prays that Defendant UNUM Group be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the actual damages, additional damages, and exemplary damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiff may be entitled at law or in equity, whether pled or unpled.

OF COUNSEL:

**CASTILLO SNYDER, P.C.**
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, Texas 78205
(210) 630-4200
(210) 630-4210 (Facsimile)

Respectfully submitted,

 s/ *Jesse R Castillo*
Jesse R. Castillo
State Bar No. 03986600
S. Dist. TX ID. No. 20726
*jcastillo@casnlaw.com*
**CASTILLO SNYDER, P.C.**
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, TX 78205
(210) 630-4200
(210) 630-4210 (Facsimile)
Attorney In Charge

*ATTORNEYS FOR PLAINTIFF ELAINE C. SHARP, MD*